[Filed March 4, 1892.]

## J. V. LANKIN v. JAMES TERWILLIGER et al.

ROADS AND STREETS — EASEMENTS AND SERVITUDES.— By the location of a county road, the public only acquires an easement in the land, while the fee remains in the owner, subject to this charge of the public thereon; and when the road is vacated by public authority, the land covered by it immediately reverts to the owner freed from the easement.

CONSTRUCTION OF DEEDS — HIGHWAY NAMED IN CONVEYANCE — ESTOPPEL.— It is a settled rule of law that when a grantor conveys land expressly with reference to a road or street over his other land, he and his successors in interest cannot, by reason of estoppel, so use the soil of the highway as to defeat the enjoyment thereof by the grantee, his heir, or assigns; but this principle will not be applied in the construction of a deed, unless it clearly

XXII OR.— 7.

appear that it was the intention of the parties to consider the use of the highway as part of the transaction, although there may be, in the description of the land, some reference to the highway as a monument.

Multnomah county: L. B. STEARNS, Judge.

Defendants appeal. Reversed.

*R. & E. B. Williams & Carey,* for Appellants.

*U. S. Grant Marquam,* for Respondent.

BEAN, J.—This suit is brought for the purpose of perpetually enjoining the defendants from enclosing, building upon, or otherwise obstructing what was formerly a county road adjoining plaintiff's property on the east. The plaintiff claims to have a right of way over the premises of defendants the full width of the former county road. From the pleadings and stipulation of the parties, it appears that prior to and on the third day of January, 1871, the defendant James Terwilliger and his then wife, Philinda, were the owners of the donation land claim in Multnomah county, along the east side of which was located a toll road known as the McAdam road, and over and across which was located a county road leading from the town or village of Fulton to the city of Portland, and used by the public as and for a public road; that on the third day of January, 1871, Terwilliger and wife sold and conveyed by warranty deed to the Portland Homestead Association, that portion of their donation claim west of the county road aforesaid, describing the land so conveyed by metes and bounds, commencing at a point on the west side of the county road, at the southeast corner of a piece of land known as the old cemetery, five chains south of the claim line between Terwilliger and Carruthers; thence with the meander of said road as follows: south 1° west 7.50 chains, south 12° west 7.50 chains, south 24° 45' west 4.87 chains, to the southeast corner of this tract of land; thence by courses and distances to the place of beginning.

The deed also contained the grant of a right of way for three roads eighty feet wide across the intervening lands of the grantors from the McAdam road to the land conveyed. Immediately after the purchase by the Homestead Association, it caused the land to be laid off into lots and blocks, and a map or plat thereof to be recorded in the proper office. As so laid off and platted, the lots in block B extend from Douglas street, as designated on the plat, to the county road. The plaintiff is now the owner by purchase, and through mesne conveyances, of all the right, title, and interest of the Homestead Association in and to the east half of lot No. 3, in said block B, and has no way of egress or ingress to or from said property, except over and along the road or way in controversy here.

In January, 1880, the county of Multnomah, having acquired by purchase or condemnation the McAdam road, the road over and across the Terwilliger place was discontinued by the proper authorities and relocated on what was formerly the McAdam road. Subsequently the defendants, who are the successors in interest of Terwilliger and wife, took possession of the land formerly occupied by the county road; and having enclosed the same, erected two houses thereon, and deny the plaintiff's right to use the same or any portion thereof, as a way or otherwise. Hence this suit, which having been decided in plaintiff's favor in the court below, defendants appeal.

By the location of the county road over the lands of Terwilliger and wife, the public acquired no more than a right of way as an easement or servitude, with the powers and privileges incident thereto. The fee and all rights of property not incompatible with the public enjoyment as a way remained in the owners; and when the road was abandoned or discontinued by act of public authority, the land covered by it immediately reverted to them unincumbered by the easement or servitude. (Elliott on Roads,

670; Angel on Highways, §§ 301–2; *Jackson* v. *Hathaway*, 15 Johns. 447; 8 Am. Dec. 263.)

But plaintiff claims that because the land sold and conveyed to the Portland Homestead Association was at the time bounded on the east by a public highway over the lands of the grantors, they and their successors in interest are estopped from setting up any claim or doing any acts inconsistent with the use of the road or way by their grantees or persons claiming under it, and that the discontinuance of the road by act of public authority only affects the rights of the public to use the road as a public highway. It seems to be a settled rule of law, that where a grantor conveys land, describing it as bounded expressly on a street or way over his other lands, or by reference to a map or plan upon which a street is shown, he and those claiming under him are forever afterwards estopped to deny the existence of such street as to the grantee, his heirs or assigns; and if the way is a public highway, and by competent authority should afterwards be discontinued, such grantor or successor in interest cannot use the soil of the highway so as to defeat the right of way of the grantee, his heirs or assigns, or render it substantially less beneficial. (3 Wash. Real Property, 420; *Howe* v. *Alger*, 4 Allen, 206; *White's Bank* v. *Nicholas*, 64 N. Y. 65; *Smith* v. *Lock*, 18 Mich. 56; *Sutherland* v. *Jackson*, 32 Me. 80; *Dawson* v. *Ins. Co.* 15 Minn. 136; 2 Am. Rep. 109.)

This doctrine rests upon the fact that the grantor, by describing the land as bounded by a way, when he is the owner of the soil under the way, intends thereby to confer upon the grantee, as appurtenant to the granted premises, the right to use such way; and whether it be deemed to operate as an implied grant, covenant, warranty or estoppel, binding on the grantor, his heirs or assigns, is immaterial. "The right itself would be inferred from that great principle of construction," says Mr. Chief Justice SHAW, "that every grant and covenant shall be so construed a: to secure

to the grantee the benefits intended to be conferred by the grant, and that the grantor shall do nothing to defeat or essentially impair his grant." (*Parker* v. *Framingham*, 8 Met. 268.)

The question in all such cases is, whether the road or way is intended as the boundary of the granted premises. Where the land is conveyed by a certain and definite description, as by metes and bounds, the fact that the boundary as described in the conveyance may be coïncident with the line of the way, does not of itself raise the implication that such way was intended as the actual boundary, or confer upon the grantee the right to use such way as appurtenant to the granted premises, but it must appear from the conveyance, either directly or by fair inference, that it was intended to bound the land by the road or way. (*Parsons* v. *Johnson*, 68 N. Y. 62; 23 Am. Rep. 149.)

Now, in the case here, the land conveyed by Terwilliger and wife to the Portland Homestead Association is not described as bounded by the county road, nor do we think there is anything in the conveyance from which it can be inferred that it was so intended by the parties. The land is definitely described by metes and bounds, which carefully exclude the road, and which are complete and certain without reference to it. The starting point of the description is at a point on the west side of the county road, at the southeast corner of a piece of land known as the old cemetery, five chains south of the claim line. This corner of the cemetery lot is the controlling monument in the description, and is definite and certain without reference to the county road. In fact, if this corner be on the east side of the road instead of the west side, it would still be a controlling monument. It may be on the west side of the road, as stated in the deed, yet not exactly on the line of the road; and from this corner the courses and distances are given to the southeast corner of the tract conveyed, and by careful measurement exclude the land covered by the

road.   The only reference to the road in the deed is for the purpose of description, as any mark or monument might have been referred to, and with no intention of making it the actual boundary of the land, unless it should be coïncident with the description as given in the deed.   Such a description of the granted premises does not convey an easement in an adjoining highway.   Merely referring to a highway for the purpose of description, as any other mark or monument, is very different from bounding the granted premises by a highway over the other lands of the grantor, and thereby exposing himself to the equities of an estoppel. (*King* v. *Mayor*, 102 N. Y. 171.)

The manifest intention of the parties, as shown by the deed, was to sell and convey a piece of land definitely described by metes and bounds, containing one hundred acres, the description of which is complete and certain, without reference to the road, and in effect excludes it. The object and purpose of every reference to the county road in the deed is, first, as a monument in connection with the corner of the cemetery to designate the starting point of the description; and, second, to indicate the course of the east line from that point.   To hold that the language of this deed created an easement in the county road in favor of the grantee, would be going beyond any adjudged case which has come under our observation.   The plaintiff cannot claim this as a way of necessity, for at the time of the conveyance to the Homestead Association it was simply a convenience and not necessary for access to the lands. This right depending upon necessity, only exists when the person claiming it has no other means of passing from the granted premises into the public street or road.   (Wash. Easements, *163; *Smyles* v. *Hastings*, 22 N. Y. 217; *Gayetty* v. *Bethune*, 14 Mass. 49; 7 Am. Dec. 188.)

Here the grant of the three rights of way from the McAdam road over the intervening lands of the grantor destroyed the necessity for the one claimed, if it otherwise

existed.   It was at most only a convenience in addition to the three granted ways.   In order to create such a way, the necessity must exist at the time of the conveyance, and as to the whole tract conveyed.   The grantee cannot subsequently subdivide the tract and sell off a portion in such a manner as to make a way necessary to some particular portion thereof which did not exist as to the whole tract. In this case, plaintiff purchased the portion now owned by him after the county road had been discontinued, and with knowledge that it was cut off from Douglas street by the intervening portion of the lot, and cannot therefore claim a way of necessity as against defendants which his grantors did not have, or could not claim.   In other words, if the right now claimed were not necessary for the complete enjoyment of the whole tract by the grantee from Terwilliger, such grantee could not, by subdividing and selling separate portions thereof, create a necessity for a way which was not necessary at the time of the conveyance to it. This county road was not in any way annexed as an easement to the land conveyed, or used in connection therewith, and therefore did not pass by the word appurtenances in the conveyance to the Homestead Association.   To raise the implication of a grant of an easement as appurtenant to the land, the easement must be *de facto* annexed to the estate conveyed at the time of the grant, and must be necessary to its enjoyment in the condition in which it then is. (*Parker* v. *Bennett*, 11 Allen, 388.)

The decree of the court below is reversed and complaint dismissed.